**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In Re**
**ROBERT JOSEPH BROWN**
**Debtor**

**Appellant**
**STATE FARM AUTOMOBILE**
**INSURANCE COMPANY,**

                **Plaintiff,**

**-vs-**                                                   **Case No. 6:08-cv-1517-Orl-18DAB**

**Appellee**
**ROBERT JOSEPH BROWN,**

                **Defendant.**

# ORDER

State Farm Mutual Automobile Insurance Agency ("State Farm") appeals a July 3, 2008 order of the Bankruptcy Court (Doc. 2-3) that confirmed the plan of reorganization filed by the Appellee, Robert Joseph Brown ("Brown" or "Debtor"). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158.

**I.    Background**

The instant dispute grew out of litigation instituted by State Farm in 2003 against Brown and Spectrum DX Services, Inc. ("Spectrum DX"), a Subchapter S corporation owned solely by Brown. State Farm sued Brown, his corporation and others, alleging among other things that they had committed common law fraud against State Farm and other insurance companies by billing them for medical tests that were unnecessary or never actually performed. In October 2006, after a

lengthy jury trial before the undersigned, State Farm prevailed in part on its fraud claim. In November 2006, this Court entered judgment in favor of State Farm and against Brown and Spectrum, jointly and severally, in the amount of $226,093.71.

On October 14, 2005, prior to the commencement of that trial, Brown filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. On November 14, 2006, the Bankruptcy Court entered an order (the "First Confirmation Order") confirming Brown's second amended plan of reorganization (the "Plan"). State Farm, which had objected to confirmation, appealed the First Confirmation Order. In November 2007, this Court determined that the record was insufficient to resolve the appeal and remanded the case for additional factual findings. (Doc. 35 in Case No. 6:07-cv-316-Orl-GAP).

On remand, the Bankruptcy Court held an additional evidentiary hearing and another confirmation hearing. On July 3, 2008, the Bankruptcy Court entered an order (the "Second Confirmation Order") overruling State Farm's objections and again confirming the Plan, effective November 14, 2006. On September 4, 2008, State Farm filed the instant appeal of the Second Confirmation Order. State Farm argues that the Plan should not have been confirmed because it was not filed in good faith and because it was not feasible.

**II. Applicable Law**

    A.    <u>Standard of Review</u>

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). A finding of fact is clearly erroneous when the reviewing court on the entire record is left with the definite and firm

conviction that a mistake has been committed, even though there is some evidence in the record to support the finding. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Under this standard, the reviewing court may not reverse a finding of fact simply because it would have decided the case differently. *Id.* Where there are two plausible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Id.*

This Court reviews the Bankruptcy Court's conclusions of law under a *de novo* standard. *Williamson*, 15 F.3d at 1038. Under *de novo* review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

B.   Good Faith

Section 1325 of the Bankruptcy Code provides that a debtor's plan of reorganization must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The burden of proof to establish that a Chapter 13 plan is filed in good faith is on the debtor, and this burden is heavier where the debtor seeks to discharge debts that would not be dischargeable under Chapter 7. *In re Elisade*, 172 B.R. 996, 1000 (Bankr.M.D.Fla. 1994). Analysis of a debtor's good faith in a Chapter 13 case requires examination of the debtor's behavior both pre-petition and post-petition. *In re McGovern*, 297 B.R. 650, 658 (S.D. Fla. 2003) The determination of a debtor's good faith in proposing a Chapter 13 plan is a factual finding, reviewable under the clearly erroneous standard. *Id.* at 655.

The concept of "good faith" is not defined in the Bankruptcy Code. Courts have generally held that good faith in this context is to be determined on a case-by-case basis, under a "totality of

the circumstances" test that requires consideration of a broad range of objective and subjective factors. *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983). These factors include: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his or her dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor contracted the debts and his or her demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) the burden which the plan's administration would place on the trustee. *Id.* The list is non-exclusive, and other factors or exceptional circumstances may support a finding of good faith even though a debtor has proposed no or only nominal repayment to unsecured creditors. *Id.*

**III. Analysis**

    **A. Good Faith**

State Farm points to a number of items that allegedly demonstrate Brown's lack of good faith in filing this case, or his plan of reorganization, or both. Such items are to be considered together for purposes of a totality of the circumstances analysis. But for the sake of convenience, they are addressed separately below.

        1.    <u>Two-party dispute and non-dischargeable debt</u>

State Farm notes that it was the only unsecured creditor in Brown's case, and contends that Brown filed "for the sole purpose" of obtaining a discharge of the judgment State Farm obtained

on its fraud claim, which would not have been dischargeable under Chapter 7. (Doc. 18 at 7). A finding that a bankruptcy case is essentially a two-party dispute may constitute evidence that the case was filed in bad faith. *See*, *e.g.*, *In re Hatcher*, 218 B.R. 441 (8th Cir. BAP 1998). However, as State Farm notes, Brown's bankruptcy schedules reflected numerous creditors. In State Farm's words, many of these creditors were "other insurance carriers that [Brown] had likely defrauded through the same scheme giving rise to State Farm's claims." (Doc. 18 at 25).

The fact that Brown is seeking a discharge of potential fraud claims reflects poorly on his motivation for filing this case.[1] But the existence of these potential fraud claims also undercuts State Farm's argument that this bankruptcy case is, in reality, nothing more than a two-party dispute.

### 2. Ownership of Spectrum DX

When Brown filed his bankruptcy schedules on November 8, 2005, he failed to list his ownership of Spectrum DX on Schedule B. In addition to requiring the debtor to list such ownership interests, Schedule B also calls for the debtor to disclose their value. Obviously, Brown did not disclose a value for his interest in Spectrum DX.

At the time Brown filed this case, Spectrum DX's bank account contained approximately $170,000. The vast majority of this money had come from the sale of the company's office building a few weeks earlier. Nearly a year passed before Brown corrected his Schedule B to include the ownership interest in Spectrum DX. By that time, the Spectrum DX account had been almost entirely depleted by Brown. (Doc. 18 at 20). Much of the money went to benefit Brown

---

[1] The same is true of his effort to obtain a discharge of his debt to State Farm on its fraud claim.

personally, paying for such things as Brown's salary and a health insurance premium for his wife pursuant to their marital settlement agreement. (Doc. 18 at 26).

Obviously, on the day Brown filed his inadequate Schedule B, State Farm already knew that Brown owned Spectrum DX. State Farm's fraud case against Brown and Spectrum DX had been going on for two years. However, State Farm argues that Brown failed to disclose his ownership of Spectrum DX on his Schedule B so as to avoid placing a value on it, which would have revealed the $170,000 in Spectrum DX's bank account in time for his creditors to do something about it. By failing to list the interest, the argument goes, Brown was able to use Spectrum DX as his "personal piggy bank."

This contention does not stand up to close scrutiny. As the Bankruptcy Court found, Brown was not required to list the Spectrum DX bank account itself on his bankruptcy schedules, as it was his company's asset, not his own. And even if he had listed his interest, its value was not simply the value of the cash in its bank account. Spectrum DX was a closely held corporation with comparatively few assets facing significant fraud claims and engaged in potentially ruinous litigation. Brown provided expert testimony that his ownership interest in Spectrum DX as of the filing date was properly valued at zero. (Doc. 2-3 at 18-19). Other than pointing to the amount of money in the bank account, State Farm provided no evidence to the contrary.[2] In addition, the Bankruptcy Court found that the expenditures from Spectrum DX's account were "fully and satisfactorily explained by the Debtor" (Doc. 2-3 at 20). State Farm suggests that many of the

---

[2]In addition, the Court notes the Bankruptcy Court's finding that Brown disclosed his interest in Spectrum on the record at his Section 341 meeting of creditors, at which he produced a balance sheet showing Spectrum had approximately $97,000 in assets and a closing statement for the just-completed sale of the office building. (Doc. 2-3 at 12).

expenditures were illegitimate, but presents no evidence that would compel such a conclusion. The Bankruptcy Court's finding that the failure to list Spectrum DX on Brown's initial Schedule D was nothing more than an oversight is not clearly erroneous.

### 3. Joint checking account

Brown also failed to include on Schedule B a joint checking account that he held with his girlfriend, Brenda McKee ("McKee").[3] McKee deposited substantial sums into the joint checking account that were paid to her from Spectrum DX, including a "severance payment" of approximately $20,000 and weekly payments from September 2005 to June 2006 totaling just over $7,000. (Doc. 18 at 28-29). State Farm argues that the money was likely used for the benefit of Brown, who moved in with McKee during the pendency of the bankruptcy proceedings. However, the Debtor testified that none of the money in the account was (or had been) his, that his name was on the account solely as a convenience for his girlfriend, and that he never wrote any checks or otherwise exerted control over the money in the account. State Farm's only evidence to the contrary was to point out that some of the money in the account was used for expenses consistent with a couple living together, such as purchases at home improvement centers and restaurants. (Doc. 18 at 29). This is far from compelling evidence that the money in the joint checking account was really the property of the Debtor and therefore should have been included on his Schedule B.

---

[3] In his brief, Brown complains that State Farm has violated an order of the Bankruptcy Court, forbidding it from relying on certain evidence. (Doc. 21 at 5). The evidence at issue includes evidence regarding this joint checking account and the source of certain payments made to Brown's counsel. (Doc. 21 at 5). State Farm argues that subsequent orders of the Bankruptcy Court superseded the order precluding its use of this evidence. (Doc. 24 at 4-5). Because this Court does not have enough information to resolve the dispute, and because the evidence at issue does not affect the outcome of this appeal, this Court will consider it and leave it to the Bankruptcy Court, if it deems it appropriate, to determine whether its order has been violated.

### 4. Restatement of income and expenses

Brown restated his income and expenses on his schedules during the course of the proceedings. For example, his initial schedules showed that he would be receiving a salary of $2,467 per month from Spectrum DX. Brown later amended his schedules to eliminate this income, and he testified that he had closed Spectrum DX in May 2005 – months before he filed his bankruptcy petition. (Doc. 18 at 31). At the time he amended his schedules to eliminate the Spectrum DX income, Brown also eliminated approximately $1,900 in monthly expenses that he had included in his initial schedules. According to State Farm, this shows that Brown was intentionally misstating his income and expenses, manipulating them so that the Plan would qualify for confirmation. (Doc. 18 at 26). As additional evidence of this manipulation State Farm complains that Brown initially scheduled $2,166.67 in income per month from another business, Melbourne DX Testing ("Melbourne DX"), but later testified that the day was "coming" when this income would dry up. (Doc. 18 at 32).

However, State Farm presented no evidence that Brown knew or should have known that either income stream would cease before he completed his payments under the Plan. In the absence of such evidence, it was reasonable for the Bankruptcy Court to conclude that Brown was merely mistaken regarding his prospects for future income, rather than lying. As for the restatement of expenses, Brown moved in with McKee during the pendency of these proceedings. As such, it is not implausible for his expenses to drop significantly, due to the elimination of his rent or mortgage payment ($1,000), utilities ($340), and home maintenance expense ($50), as well as a reduction in his monthly food budget from $500 to $200. (Doc. 18 at 21). Although this does

not account for the entirety of the $1,900 reduction, it is enough to support a finding that the restatement of expenses was not indicative of bad faith on Brown's part.[4]

### 5.     Post-petition debt

After filing his bankruptcy petition, Brown sought and received approximately $26,000 from family members. (Doc. 18 at 32). He also signed a lease on behalf of Spectrum DX. (Doc. 18 at 32). State Farm argues that his failure to disclose his assumption of these post-petition obligations is evidence of bad faith. (Doc. 18 at 32-33). But the Debtor testified that he was under no legal obligation to repay the $26,000 – that it was given as a gift, though he intended to repay it if he could. (Doc. 21 at 17). State Farm presented no evidence to contradict this. As for the building lease, the only evidence was that it was an obligation of Spectrum DX, rather than the Debtor. Thus the Bankruptcy Court did not clearly err in finding that neither of these items was a post-petition "debt" incurred by Brown, or evidence of his bad faith.

### 6.     Gifts and anticipated expenses

State Farm complains that Brown failed to disclose the fact that his ex-wife gave him a gift of $10,000 in September or October 2006 to pay his attorneys. (Doc. 18 at 33). State Farm also complains that Brown failed to disclose a reasonably anticipated expense: specifically, that by the end of 2006, Spectrum DX would stop paying his $1,500 monthly health insurance obligation,

---

[4]State Farm also argues that Brown misrepresented the source of the payments for his bankruptcy counsel's fee, with all of the money coming from Spectrum DX even though his initial schedules showed that some of the money had come from Brown personally. (Doc. 18 at 30). According to State Farm, this allowed Brown to hoodwink his creditors and the court by using his company's funds to pay his personal obligations. (Doc. 18 at 31). It is not clear how having his obligations paid is supposed to be evidence of Brown's bad faith; however, as noted above, the Bankruptcy Court found that Brown had satisfactorily explained Spectrum DX's expenditures, and State Farm has not provided any evidence to challenge this conclusion.

forcing him to find another policy. (Doc. 18 at 33). Again, however, State Farm has no evidence that Brown lied on either score – that he knew when he filed his schedules that he would be receiving the money from his ex-wife, or that Spectrum DX would run out of money by a particular date. The Bankruptcy Court was not obligated to find that either of these alleged failures to disclose was evidence of bad faith.

### 7. Conclusion

Of the dozen-or-so items State Farm points to, only one – the character of the debts Brown hopes to discharge – is clearly suggestive of bad faith. As for the remainder, the Bankruptcy Court *could* have found that at least some of the failures to disclose or other items were indicative of bad faith. But the evidence was not so overwhelming as to any of these items as to require the Bankruptcy Court to make such a finding. With that predicate, under a totality of the circumstances analysis, the Bankruptcy Court's conclusion that Brown filed his Chapter 13 case and his plan of reorganization in good faith was not clearly erroneous.

### B. Feasibility

State Farm also makes a perfunctory argument that the Bankruptcy Court erred in confirming the Plan because Brown failed to demonstrate that it was feasible. In support, State Farm relies on several of the same items it relied on to demonstrate bad faith – the $10,000 gift from his ex-wife and the $26,000 he received from family members. According to State Farm, Brown's reliance on these post-petition sums demonstrates that the Plan was not feasible, and therefore should not have been confirmed. (Doc. 18 at 35).

This argument does not warrant extended discussion. The fact that a plan of reorganization fails is not conclusive evidence, standing alone, that it was unfeasible; and the fact that a debtor

receives additional money (and spends it) is not proof that, but for the additional money, the plan would have failed. State Farm has not shown that the Bankruptcy Court erred in finding that the Plan was feasible.

In consideration of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the appeal is **DENIED**. The order of the Bankruptcy Court dated July 3, 2008, confirming the Debtor's second amended plan of reorganization, is hereby **AFFIRMED**. The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 19, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party